UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STACY L. OBA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-689 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Stacy L. Oba applied for social security disability benefits, claiming that she was unable to work due to a variety of impairments. She alleged that she suffered extreme pain from degenerative disc and joint diseases that prevented her from engaging in almost any activities, as well as gastrointestinal problems that would prevent her from attending a job. An administrative law judge found that Ms. Oba was limited in her ability to work, but not as severely as alleged, and that there were jobs that a person with Ms. Oba's limitations could perform. Accordingly, the Commissioner denied Ms. Oba's claim for benefits. Ms. Oba filed this action seeking review of that decision. For the reasons explained below, the Court affirms the Commissioner's denial of the claim.

## I. FACTUAL BACKGROUND

Ms. Oba filed applications for Disability Insurance Benefits and Supplemental Security Income, claiming that, by February 2012, she had become unable to work due to her health conditions. She primarily alleged that she was disabled due to pain that she suffered from degenerative disc and joint disease in her back, hip, and knees. Though her x-rays and MRIs revealed only mild findings, Ms. Oba complained of pain so severe that she was unable to walk

or engage in any meaningful activity. She sought treatment for that condition through a pain management doctor, who prescribed narcotic pain medication. Ms. Oba also complained of extreme gastrointestinal conditions, and testified that for the previous two and half years, she had been throwing up ten to twenty times a day and having diarrhea twenty to thirty times a day. The record showed that Ms. Oba had been diagnosed with irritable bowel syndrome and narcotic bowel syndrome, but also contained conflicting evidence as to whether or to what extent Ms. Oba suffered symptoms from those conditions. Ms. Oba had also undergone gastric bypass surgery some time before her alleged onset date, and while she had lost several hundred pounds, she still qualified as obese.[1]

An administrative law judge held a hearing on Ms. Oba's claims, and Ms. Oba and a vocational expert each testified. The ALJ then issued a written decision that concluded Ms. Oba did not qualify as disabled. In particular, the ALJ found at step two that Ms. Oba had a number of severe impairments, including degenerative disc disease, knee and hip degenerative joint disease, and obesity. He then found that Ms. Oba did not meet or equal any of the listings at step three—a finding Ms. Oba does not challenge on appeal—so he proceeded to evaluate her residual functional capacity. Among other limitations, he found that she could stand or walk up to two hours in a day; that she could lift or carry up to twenty pounds occasionally and ten pounds frequently; that she could occasionally balance, stoop, and kneel, but could not climb ladders, ropes, or scaffolds; and that she could not perform commercial driving or be exposed to hazards. The vocational expert testified that a person with those limitations could perform a number of sedentary jobs, so the ALJ found at step five that Ms. Oba was not disabled. The

---

[1] Ms. Oba was also diagnosed with depression and anxiety, but does not raise any arguments in this Court relating to those conditions.

Appeals Council denied Ms. Oba's request for review, making the ALJ's decision the final decision of the Commissioner. Ms. Oba thus filed this action seeking review of that decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not

required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act.[2] *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or

---

[2] Ms. Oba applied for Disability Insurance Benefits and for Supplemental Security Income, but as relevant here, the standards for those programs are identical, so the Court does not further distinguish between those two claims.

4

equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court construes Ms. Oba as raising three arguments in support of reversing the Commissioner's decision. First, that the ALJ erred in considering the credibility of Ms. Oba's complaints about the severity of her conditions and limitations. Second, that the ALJ erred in discounting the opinion of Ms. Oba's treating physician, Dr. Ribaudo. And third, that the ALJ failed to properly consider any limitations caused by Ms. Oba's gastrointestinal conditions. As to each of those arguments, the record contained conflicting evidence that the ALJ had to weigh and resolve. In reviewing the ALJ's decision, the Court's role is not to re-weigh the evidence, but only to determine whether the ALJ's decision on each of those points was supported by substantial evidence. *Skinner*, 478 F.3d at 841 ("When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations."). Because the Court finds that to be the case, it affirms the decision.

**A.      Credibility**

The Court begins with the ALJ's analysis of the credibility of Ms. Oba's complaints, as that underlies the ALJ's decision on each of Ms. Oba's arguments. During the hearing before the ALJ, Ms. Oba testified to a number of extreme limitations. For example, she testified that she

suffered back, knee, and hip pain so severe that she was never able to stand or walk on her own—that she was confined to a wheelchair, but could walk up to twelve feet with the assistance of a walker. (R. 55, 58–59). She rated her level of pain at seven out of ten on a good day, and "ten plus" on a bad day, and further testified that she had at least five bad days a week. (R. 57). She also testified that she suffered extreme gastrointestinal conditions. She testified that for every day for the last two and a half years, she had been throwing up and having constant diarrhea. (R. 72). She said that she would throw up between ten to twenty times a day, and that she had diarrhea twenty to thirty times a day. (R. 72–73).

The ALJ considered this testimony and concluded that, while Ms. Oba did have pain that caused a variety of limitations, her limitations were not as severe as she testified. "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, [courts] afford their credibility determinations special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). On review, courts "'merely examine whether the ALJ's determination was reasoned and supported,'" and will overturn a credibility determination only when it is "patently wrong."[3] *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Here, the ALJ offered a lengthy explanation of the reasons for his credibility finding (R. 14, 17–19), and the Court cannot find that those reasons are patently wrong.

First, the ALJ noted that the objective medical tests revealed only mild findings. (R. 18). He discussed the various diagnostic tests that had been done over the years on Ms. Oba's back, hips, and knees, none of which revealed any condition that could explain the disabling back, hip,

---

[3] The Commissioner has since issued new guidance on how an ALJ should evaluate a claimant's statements about the intensity, persistence, and limiting effects of their symptoms, but it took effect after Ms. Oba's claim, and does not apply here. Social Security Ruling, SSR 16-3p.

and knee pain of which Ms. Oba complained. As the ALJ noted, even Ms. Oba's treating physician referred to the x-ray and MRI findings as "very insignificant." (R. 18, 324). Other tests referred to "mild" or "early" degenerative changes of the joints. (R. 18). Though, as Ms. Oba notes, an ALJ cannot rely "solely" on the lack of objective medical evidence in disbelieving her testimony, an ALJ may consider as part of its credibility analysis whether the testimony is supported by objective medical evidence. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); *Powers*, 207 F.3d at 435 ("While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's testimony. . . . The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition."). The ALJ did so here, considering the lack of objective medical evidence as one of multiple factors in the credibility analysis, and finding that this factor weighed against Ms. Oba's allegations.

Ms. Oba also argues that, while the mild degenerative changes might not be significant for a person who was not overweight, those conditions would cause significant symptoms due to her obesity. However, Ms. Oba's treating physician was aware of her weight, as were the other reviewing and examining physicians, and none of them believed that the objective findings corroborated Ms. Oba's complaints of pain, so the ALJ did not misconstrue the evidence in that manner. Also, the ALJ did acknowledge Ms. Oba's obesity and its potential to exacerbate her limitations, and he took that into account by limiting her to standing and walking only two hours in an eight-hour day (meaning essentially sedentary work). (R. 19).

The ALJ next noted that Ms. Oba's treatment had been "essentially routine in nature," as her only significant treatment consisted of monthly office visits to renew her pain medications,

7

and Ms. Oba had not sought or received treatment from an orthopedist or rheumatologist. (R. 18). In response, Ms. Oba argues that the ALJ misstated the evidence on this point. She first argues that the ALJ erred in stating that Ms. Oba had not participated in physical therapy. However, what the ALJ actually said was that Ms. Oba had not participated in physical therapy "since the alleged onset date" (R. 18), and that statement was true. Ms. Oba also notes that the ALJ said she had never received injections, when in fact she had received an injection in her back. (R. 18, 566). However, that injection likewise took place well before Ms. Oba's onset date, and that single discrepancy does not make the ALJ's assessment patently wrong. *Simila*, 573 F.3d at 517 (affirming a credibility finding that, while "not flawless," was not "patently wrong").

Next, the ALJ stated that Ms. Oba's "description of the severity of her pain and limitations has been so extreme as to appear implausible." (R. 18). That is a fair characterization, given Ms. Oba's testimony that her pain was "ten plus" out of ten at least five days a week, and that she had been vomiting ten to twenty times a day and having diarrhea twenty to thirty times a day for the last two and a half years. Ms. Oba's brief does not dispute that characterization of this testimony or otherwise respond to this factor.

Finally, the ALJ noted multiple discrepancies in the record as to Ms. Oba's complaints, as well as multiple instances in which the doctors that examined her questioned the veracity of her professed symptoms. For example, Ms. Oba testified that she was unable to stand up or walk on her own,[4] but she was observed walking when she arrived at the emergency room in February 2015. (R. 19, 787). One of her doctors noted that same month that Ms. Oba claimed to be wheelchair bound but that he had seen her walk. (R. 19, 753). On another instance, Ms. Oba

---

[4] Ms. Oba's brief characterizes her testimony as that she could walk up to twelve feet without a walker, but her testimony was actually that she could never stand or walk on her own, and that on a good day she could walk about twelve feet with the assistance of a walker. (R. 55, 58).

8

walked into the emergency room, and the doctor noted that Ms. Oba asked to be prescribed more pain medication and then suddenly began to have severe back pain. (R. 19, 632). Another doctor noted that Ms. Oba exhibited "likely attention seeking behavior." That doctor further noted that Ms. Oba complained of abdominal tenderness during the examination, but that "with distraction [she] continues to talk through abdominal exam with no obvious tenderness." (R. 18–19, 637). That observation mirrored a comment by another doctor several months earlier, who stated that it was "very difficult to accept" Ms. Oba's complaints of abdominal tenderness. (R. 14, 645). In particular, the doctor noted that Ms. Oba complained that even superficial touching of her skin caused abdominal pain, but that she showed no signs of tenderness when he examined her abdomen with a stethoscope for bowel sounds. (*Id.*). The ALJ also noted that Ms. Oba testified that she had rheumatoid arthritis and that she had no cartilage in her hips or knees. (R. 55, 65). However, the record contained no evidence of either of those conditions, as even Ms. Oba's attorney conceded at the hearing. The ALJ further noted that Ms. Oba testified that she had not driven since 2011, yet a treatment note reflected that she had been driving in July 2013. (R. 18, 409).

Ms. Oba argues in response that the ALJ engaged in cherry-picking by relying on these inconsistencies. This was not an example of cherry-picking, though; the ALJ noted multiple examples of objective contradictions between the record and Ms. Oba's testimony, which is an appropriate consideration for a credibility analysis. In addition, though Ms. Oba attempts to reconcile or minimize some of the apparent contradictions, even her doctors highlighted some of these discrepancies in their treatment notes and expressed doubt as to her symptoms, and it was appropriate for the ALJ to take that into account. Ms. Oba further argues that the ALJ should not have relied in his credibility analysis on the opinions of the state reviewing physicians, who

9

opined that her allegations as to the severity of her symptoms were only "partially credible." (R. 109, 119). However, the ALJ's decision never referenced those opinions in connection with its credibility analysis, so they appear to have had no effect on the ALJ's determination in this regard. Finally, Ms. Oba argues that the ALJ should not have considered the opinion of Dr. Inabnit, a state agency examining physician, because he was only able to perform a partial examination. However, Dr. Inabnit still met with Ms. Oba, performed a partial examination, and reviewed her medical records, so he had at least some basis on which to offer his opinion that Ms. Oba's complaints of pain were out of proportion to his findings. In addition, his opinion was one of many pieces of evidence that the ALJ cited in support of his finding, and it is clear that Dr. Inabnit's opinion was not critical to that finding.

Accordingly, the Court finds that the ALJ's credibility determination was adequately reasoned and supported, and was not "patently wrong," so the Court cannot reverse the Commissioner's decision on that basis.

**B.      Treating Physician**

Ms. Oba also argues that the ALJ erred in declining to give controlling weight to the opinion of her treating physician, Dr. Ribaudo, who treated Ms. Oba for osteoarthritis and lumbar spondylosis. In December 2012, Dr. Ribaudo completed a form outlining Ms. Oba's physical capacity. He opined that Ms. Oba could stand or walk up to two hours a day and sit up to six hours, and that she could lift up to ten pounds. He further opined that Ms. Oba could not perform simple grasping, pushing and pulling, or fine manipulation; that she could never bend, squat, kneel, climb, or reach; that she required the use of a cane; and that she would be absent from work more than eight days a month. (R. 304). The ALJ considered this opinion and decided to give it "little weight."

10

"[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).[5] "However, while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Id.* (internal quotations omitted). Thus, an ALJ may discount a treating physician's opinion when it is internally consistent or is inconsistent with other substantial evidence, so long as the ALJ offers "good reasons." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Schmidt*, 496 F.3d at 842. Courts review such a decision deferentially: "the ALJ's decision must stand as long as she has 'minimally articulated' her reasons for rejecting the treating physician's opinion." *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

Here, in discounting Dr. Ribaudo's opinion, the ALJ first noted that it "contrasts sharply with the objective radiological results." (R. 20). As discussed above, that is an accurate characterization of the evidence, as despite Dr. Ribaudo's opinion that Ms. Oba's lumbar spondylosis caused debilitating limitations, none of the tests reflected findings serious enough to cause limitations that severe. In fact, as the ALJ further noted, "Dr. Ribaudo himself concluded that the claimant's x-rays and MRI scans do not provide significant findings." (R. 20). That statement is consistent with Dr. Ribaudo's own treatment notes, which characterize the x-ray and MRI of Ms. Oba's spine as "very insignificant." (R. 349, *see also* 344 ("I'm not convinced the MRI findings are the cause of her symptoms."), 557 (noting that Ms. Oba's knees and hips show "early" degenerative changes). Since an ALJ may discount the opinion of a treating physician if

---

[5] Again, the applicable administrative regulations have been amended, but the amendments took effect after Ms. Oba's claim, so they do not apply here. 20 C.F.R. § 404.1520c.

it is not supported by medical findings, *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), it was appropriate for the ALJ to take this factor into account.

The ALJ next noted that Dr. Ribaudo's opinion "relies heavily on the excessive subjective report of symptoms provided by the claimant." (R. 20). As discussed above, the ALJ viewed Ms. Oba's subjective reports with skepticism, and cited ample evidence in support of that finding. That discussion included multiple instances in which Ms. Oba's subjective reports to her doctors were called into question. Because the ALJ found that Ms. Oba's symptoms were not as severe as her subjective complaints, it was appropriate for the ALJ to in turn discount Dr. Ribaudo's opinion, which relied on those subjective reports. *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016) (affirming the ALJ's decision to discount the treating physician's opinion, in part because the physician's "analysis was based on subjective reports from [the claimant] and his mother, rather than objective measurements"). In arguing to the contrary, Ms. Oba argues that the ALJ misstated her treatment history in discrediting her testimony, as noted above. However, as also noted above, the ALJ's credibility finding was adequately supported, notwithstanding the minor inaccuracy as to the injection she received on one occasion, so that does not present grounds for reversal.

Ms. Oba also argues that the ALJ failed to consider the reduced effectiveness of pain medication in controlling her pain, as her ability to absorb pain medication may have been reduced as a side-effect of her previous gastric bypass surgery. Ms. Oba's argument on this point misstates Dr. Ribaudo's opinion, though—she states that Dr. Ribaudo opined in February 2015 "that Ms. Oba's inability to get adequate control of her pain is related to her inability to absorb the pain medication through her intestines, the normal distribution system, because of her gastric bypass surgery." [DE 14 p. 4–5 (citing R. 752)]. In the record to which Ms. Oba cites, all Dr.

12

Ribaudo says on that topic is the following: "[Ms. Oba] has been under my care for chronic pain management associated with osteoarthritis and spondylosis. The patient is narcotic tolerant. In the past, she has undergone bariatric surgery as well." (R. 752). That statement does not support Ms. Oba's characterization. There are other points in the record where Dr. Ribaudo does note that Ms. Oba may not fully absorb the medication, but even that does not contradict the ALJ's opinion. The ALJ's finding was not that Ms. Oba had significant pain but that the pain was well-controlled by medication; he found that the medical evidence did not support that level of pain in the first place and that her subjective reports were not fully credible. Thus, Ms. Oba's argument about the effectiveness of her pain medication is not responsive to the ALJ's analysis.

Finally, Ms. Oba argues that an ALJ may not discount a treating physician's opinion simply because a non-examining physician offers a contradictory opinion. However, an ALJ can consider contrary opinions by consulting physicians in deciding to discount a treating physician's opinion. *Lazier v. Colvin*, 601 F. App'x 442, 445–46 (7th Cir. 2015) ("A treating physician's assessment . . . may be discounted if internally inconsistent or inconsistent with a consultant's opinion."); *Skarbek*, 390 F.3d at 503 ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . ."). And to the extent the ALJ relied on the opinions of the consulting physicians (both of whom found that Dr. Ribaudo's opinion was unsupported by the medical evidence), that was one of multiple factors that the ALJ considered, so the ALJ did not err in that respect. Therefore, the Court finds that the ALJ did not err in his consideration of Dr. Ribaudo's opinion.

## C.     Gastrointestinal Conditions

Last, Ms. Oba argues that the ALJ erred in finding that her gastrointestinal conditions did not qualify as "severe" at step two of the sequential analysis. The ALJ noted that Ms. Oba had been diagnosed with irritable bowel syndrome and had been treated for gastroesophageal reflux

13

disease, but he found that those impairments caused no more than a minimal effect on Ms. Oba's ability to perform work.[6] Thus, he found that these conditions were not severe. Ms. Oba argues that this finding was not supported by substantial evidence. An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). However, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Here, the ALJ acknowledged Ms. Oba's gastrointestinal conditions, but found that they did not result in limitations on her ability to work. The only evidence of limitations from these conditions came from Ms. Oba's own statements, but the ALJ noted multiple inconsistencies in those statements and thus declined to credit them. The ALJ began by noting Ms. Oba's testimony that she threw up ten to twenty times a day and had diarrhea twenty to thirty times a day. (R. 14). If true, those limitations would surely interfere with a person's ability to work. The ALJ further noted, though, that the record contained many contradictory statements in that regard. In November 2014, Ms. Oba had reported that she had five to six loose stools a day and three each night; while still substantial, that is markedly less than her testimony at the hearing. Moreover, Ms. Oba sought treatment for gastrointestinal conditions in December 2013 and February 2014, and each time she reported having only a few days of symptoms. (R. 14, 659 ("This patient states

---

[6] Ms. Oba argues that, in addition to these conditions, she also suffers from "Dumping syndrome," a possible side-effect of gastric bypass surgery when nutrients pass quickly from the stomach to the small intestine. However, it is not clear whether Ms. Oba was actually diagnosed with that condition or whether she is relying on her and her counsel's own supposition. Regardless, the ALJ addressed the alleged symptoms at issue, and Ms. Oba does not identify any reason why the precise cause of those symptoms would undermine the ALJ's analysis.

she has had some loose BMs on and off for about the last 2-3 days . . . ."), 666 ("This patient has had vomiting and diarrhea for 3 days now.")). Again, that is inconsistent with her testimony that she experienced these symptoms "every day for the last two and a half years." (R. 72). And at an office visit in February 2015, Ms. Oba reported no nausea, vomiting, or diarrhea at all. (R. 14, 759). Further, the ALJ also noted that the objective tests were "unremarkable," and that doctors had questioned the veracity of her reported symptoms, as discussed above. (R. 14).

Ms. Oba does not identify any particular flaw in the ALJ's analysis, but argues generally that his finding was not supported by substantial evidence. As just discussed, though, the record contained conflicting evidence on this point, and resolving those conflicts is the province of the ALJ. The ALJ here addressed the evidence and more than "minimally articulated" his reasons for rejecting the evidence of those potential limitations. And because the ALJ could reasonably find that the complaints of limitations associated with these conditions were not credible, the ALJ's decision was supported by substantial evidence. Thus, the ALJ did not err in this regard.

## IV. CONCLUSION

For those reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and that Ms. Oba has not presented any grounds for reversal. Accordingly, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: December 7, 2017

        /s/ JON E. DEGUILIO
Judge
United States District Court